UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DINH TRAN, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF TREASURY, <br><br> Defendant. | Case No. 1:17-cv-02601 (TNM) |

**MEMORANDUM OPINION**

Plaintiff Dinh Tran, a former employee of the U.S. Department of the Treasury, alleges that it disclosed her annual performance appraisal in violation of the Privacy Act, 5 U.S.C. § 552a.[1] The Treasury admits that it disclosed Ms. Tran's performance appraisal, a protected record. But the Treasury argues that the Privacy Act's "routine use" exception, *id.* § 552a(b)(3), and "need-to-know" exception, *id.* § 552a(b)(1), permit the disclosure. So the Treasury has moved for summary judgment. The "routine use" exception does not apply, but the Treasury's motion will be granted because the "need-to-know" exception applies.

I.

Dinh Tran was an Attorney-Advisory in the Office of Professional Responsibility ("OPR") within the Internal Revenue Service ("IRS").[2] She applied for a six-month detail with the

---

[1] Ms. Tran originally sued Treasury Secretary Steven Mnuchin in his official capacity. Individuals, however, are not proper parties under the Privacy Act. *See Cloonan v. Holder*, 768 F. Supp. 2d 154, 162 (D.D.C. 2011). Instead, the Privacy Act permits suits against "agencies," which it defines by reference to 5 U.S.C. § 552(f). Courts thus have considered cabinet-level entities or their components to be proper defendants in Privacy Act litigation. *See, e.g.*, *Thompson v. Dep't of State*, 400 F. Supp. 2d 1 (D.D.C. 2005). So the Plaintiff consented to substituting the Department of Treasury as the Defendant. *See* Consent Mot. to Substitute Party Def., ECF # 20.

[2] Unless otherwise indicated, the Court has drawn the background facts from Ms. Tran's Statement of Facts, ECF # 32 pp. 3–10. In considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in her favor, *see Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

Washington, D.C., field office of Division Counsel, Small Business/Self-Employed ("SB/SE"). SB/SE is within the Office of the Chief Counsel ("OCC") for the IRS, and it provides legal advice to various components within the Treasury.

There are two types of detail requests: office-initiated and employee-initiated. Office-initiated details occur if an office determines that it needs to detail an employee into an office unit to meet organizational needs. Def. SUMF, ECF # 30-1 ¶ 3. Employee-initiated details, however, are based on an employee's desire to work outside her usual office, not organizational needs. *Id.* Ms. Tran's request was employee-initiated. Compl, ECF # 1 ¶ 7.

When considering an employee-initiated detail request from an IRS employee, SB/SE's practice is to evaluate the requesting employee's knowledge, skills, and experience to determine whether the detail would benefit SB/SE and the requesting employee. Def. SUMF, ECF # 30-1 ¶ 6. SB/SE also confirms that the requesting employee has completed her probation period and has a rating of "fully successful."[3] *Id.* ¶¶ 4, 6–7. SB/SE therefore requests the employee's resume and most recent performance appraisal. *Id.* ¶ 6.[4] SB/SE then recommends whether to approve the detail to the Office of Associate Chief Counsel (Finance and Management) ("F&M"), which has final approval authority. *See* Meneely Dep., ECF # 32-13 p. 25: 2–19; Chief Counsel Directives Manual 30.4.1.8.2(5).[5]

---

[3] This requirement is commensurate with Division Counsel SB/SE's eligibility requirements for employees seeking details from other offices within OCC. *See* Agreement Between National Treasury Employees Union and IRS OCC, Meneely Aff., ECF # 30-3, Ex. A; Def. SUMF, ECF # 30-1 ¶ 4–6.

[4] Performance appraisals rate employees across five "Critical Job Elements:" Employee Satisfaction-Employee Contribution, Customer Satisfaction-Knowledge, Customer Satisfaction-Application, Business Results-Quality, and Business Results-Efficiency. For each Critical Job Element, the performance appraisal rates the as "Outstanding," "Exceeds Fully Successful," "Fully Successful," "Minimally Successful," or "Unacceptable." It then aggregates the scores to give an overall rating. *See* Tran Performance Evaluation, ECF # 32-6.

[5] The Treasury cites the Chief Counsel Directive Manual in its statement of undisputed material facts, *see* ECF # 30-1 ¶5, and it is available at https://www.irs.gov/irm/part30/irm_30-004-001#idm140128588005504. "Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies." *Pharm. Research & Mfrs. of Am. v. U.S. Dep't of Health and Human Servs.*, 42 F. Supp. 3d 28, 33 (D.D.C. 2014) (collecting cases).

Debra Moe, then Division Counsel for SB/SE, emailed Patricia Manasevit in F&M, stating that Ms. Tran was interested in a detail to SB/SE's D.C. field office. Ms. Moe included Bruce Meneely on the email. At the time, Mr. Meneely was Ms. Moe's deputy. In that role, Mr. Meneely oversaw the field operations for SB/SE, including the nine Area Counsel offices. *See* Def. SUMF, ECF # 30-1 ¶12. Ms. Moe asked that Ms. Tran's supervisor contact Mr. Meneely, and she stated that SB/SE would be seeking information about Ms. Tran's qualifications and performance history. Meneely Aff., ECF # 30-3, Ex. B.

Ms. Manasevit forwarded a copy of Ms. Tran's resume to Mr. Meneely. Def. SUMF, ECF # 30-1, ¶ 14. Mr. Meneely then contacted Ms. Tran's supervisor, OPR Director Stephen Whitlock, to ensure that Mr. Whitlock was aware of and would approve Ms. Tran's detail request. *Id.* ¶ 15. Mr. Whitlock supported the detail, and Mr. Meneely requested a copy of Ms. Tran's most recent performance appraisal, which Mr. Whitlock provided. *Id.* ¶¶ 15–16. Mr. Meneely provided copies of Ms. Tran's performance appraisal and resume to Area Counsel Nancy Romano and Deputy Area Counsel Thomas Rath, who were responsible for management oversight for SB/SE's D.C. field office. *Id.* ¶ 17. He asked them to evaluate Ms. Tran's qualifications and recommend whether to approve her detail request. *Id.*

Ms. Romano spoke with Mr. Meneely about processing Ms. Tran's detail request, including whether front-line managers could be involved and whether the Division Counsel's office had any preference about the detail request. Meneely Dep., ECF # 32-13 pp. 37: 16–38: 18. Mr. Meneely told Ms. Romano that she could engage the front-line managers in the D.C. field office and they could interview Ms. Tran if they chose. *Id* at p. 38: 10–18. He also told her that the Division Counsel's office had no preconceived view on the detail request. *Id.*

3

The Area Counsel's office then emailed Ms. Tran's information to three front-line managers who were SB/SE Associate Area Counsels for the D.C. field office. They interviewed Ms. Tran and ultimately recommended against approving her request. Def. SUMF, ECF # 30-1 ¶ 20. They did not believe that she had the requisite litigation skillset to work in the D.C. field office. *Id.* And they were concerned about Ms. Tran's difficult relationship with her OPR manager. *Id.*

Mr. Meneely reviewed the recommendation and then forwarded a copy of Ms. Tran's information to Ms. Moe. Meneely Dep., ECF #32-13 p. 49: 3–18. He informed her that the front-line managers recommended against approving Ms. Tran's detail request and asked to speak with her about Division Counsel's ultimate recommendation. *Id.* Ms. Moe then asked Mr. Meneely to tell F&M that SB/SE recommended against approving Ms. Tran's detail request. Mr. Meneely did so and learned that Ms. Tran had accepted a detail with another division. Meneely Dep., ECF # 32-13, p. 37: 7–19.

Ms. Tran sued, alleging that disclosure of her performance appraisal violated the Privacy Act, 5 U.S.C. § 552a. The Treasury concedes that the Privacy Act protects employees' performance appraisals, the Treasury disclosed the record, and it did not get Ms. Tran's consent beforehand. But the Treasury argues that the disclosure was permissible under the Privacy Act's "routine use" exception, *id.* § 552a(b)(3), and its "need-to-know" exception, *id.* § 552a(b)(1). The Treasury thus moves for summary judgment.

II.

Summary judgment is appropriate when the pleadings and the evidence establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial

responsibility to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made an adequate showing that a fact is not in dispute, the burden shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In determining whether there is a genuine dispute of material fact, a court must "assume the truth of all statements proffered by the party opposing summary judgment" and construe all evidence in favor of the non-moving party. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). A non-movant, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. *Anderson*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *id.* at 249–50. And unsupported, conclusory assertions offered with no evidentiary support do not establish a genuine issue for trial. *See Greene,* 164 F.3d at 675. Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for [her.]" *Anderson*, 477 U.S. at 252.

### III.

The Privacy Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency." 5 U.S.C. § 552a(b).[6] But the Privacy Act permits such disclosures in two circumstances. Disclosure is proper "pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." *Id.* The parties agree that Ms. Tran did not consent to

---

[6] Whenever an agency discloses an individual's information contrary to § 552a(b), the individual may bring an action in a federal district court. *Id.* § 552a(g)(1)(D). Thus, the Court has jurisdiction. *See* 28 U.S.C. § 1331.

the Treasury disclosing her performance appraisal. But disclosure is also proper where any of twelve enumerated exceptions applies, § 552a(b)(1)–(12). According to the Treasury, two enumerated exceptions apply here: the "routine use" exception, § 552a(b)(3), and the "need-to-know" exception, § 552a(b)(1).

A.

Section 552a(b)(3) allows agencies to disclose otherwise protected records "for a routine use as defined in subsection (a)(7)." A "routine use," for the disclosure of a record, is the use of a record "for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). Agencies must publish in the Federal Register "each routine use of the records contained in the system, including the categories of users and the purpose of such use." *Id.* § 552a(e)(4)(D). These regulations are known as Systems of Records Notice (SORNs).

The Treasury maintains that SORN 36.003, *General Personnel and Payroll Records*, covers the disclosure here. *See* 80 Fed. Reg. 54101 (Sept. 8, 2015). This SORN applies to current and former employees of the Treasury and covers records, like Ms. Tran's performance appraisal, in the employee's Employee Performance File. The Treasury first points to SORN 36.003(3), which allows it to

> [d]isclose information to a Federal, state, local, or tribal agency, or other public authority, which has requested information relevant or necessary to hiring or retaining an employee, or issuing or continuing a contract, security clearance, license, grant, or other benefit.

Next, the Treasury points to SORN 36.003(9), which allows it to "[d]isclose information to a prospective employer of an IRS employee or former IRS employee."

According to the Treasury, it was a "prospective employer" of Ms. Tran and her detail request was a hiring action. Thus, it argues that either SORN 36.003(3) or 36.003(9) covers the

disclosure of Ms. Tran's performance appraisal.  But the Treasury has not shown that it was a "prospective employer" or that Ms. Tran's detail was a "hiring" action.

The problem with the Treasury's theory is that when Ms. Tran requested a detail, the Treasury was already her employer.  As discussed, Ms. Tran was an attorney with OPR, a Treasury component.  The Treasury has not shown how it may qualify simultaneously as a current employer and a "prospective employer" under SORN 36.003(9), and it has cited no caselaw to support its position.  Just as a hungry child may not have his cake and eat it too, so an agency may not employ someone and also be her prospective employer.

Nor has the Treasury showed that a detail is a hiring action under SORN 36.003(3).  As Ms. Tran points out, federal statutes and regulations that authorize executive agencies to hire non-employees are distinct from those that authorize agencies to detail current employees to different offices within the agency.  *Compare, e.g.*, 5 U.S.C. §§ 3301 *et seq.* (appointments) *with* 5 U.S.C. §§ 3341 *et seq.* (details); *see also* 5 U.S.C. §§ 9510(a), (c).  When an agency details an employee, it has already hired her; the employee is merely being assigned temporarily to a different position within the employing organization.

The Treasury complains that this reasoning relies on a too miserly a definition of "hiring."  It cites Black's Law Dictionary to define "hire": "to engage the labor or services of another for wages or other payment." *Black's Law Dictionary* (10 ed., 2014).  The Treasury argues that it was considering engaging Ms. Tran—for wages—in a position within the agency.  But it was already true that the Treasury was engaging Ms. Tran's services for wages, and the Treasury has not established that a detail qualifies as a *new* hiring action.  Nor has it meaningfully addressed Ms. Tran's argument that details are distinct from hiring actions.

Next, the Treasury argues that the "routine use" exception applies because SORN 36.003(3) permits the agency to disclose "information to a Federal . . . public authority, which has requested information relevant or necessary to . . . issuing or continuing a . . . benefit." But when an agency publishes the routine uses for a record, it must include "the purposes of such use," 5 U.S.C. § 552a(3)(4)(D), and the broad term "benefit" does not provide adequate notice of the purposes for which the Treasury may release an employee's information. *Cf. Britt v. Naval Invest. Serv.*, 886 F.2d 544, 547–48 (3d Cir. 1989).[7] The Treasury has pointed to no authority for its argument that a work detail qualifies as a "benefit" under SORN 36.003(3), and reliance on such overboard terms to argue that a disclosure is permitted after the fact frustrates § 552a(3)(4)(D)'s publication requirement.

This is especially true given the Treasury's proposed far-reaching definition of "benefit" under SORN 36.003(3). The Treasury claims that because employee-initiated detail requests give employees the opportunity to gain knowledge and experience outside their normal work section, "such a detail is a 'benefit[.]'" Def. Reply in Supp. of Mot. for Summ. J., ECF # 33 pp. 5–6. Essentially, the Treasury argues that anything that is desirable, beneficial, or helpful is a "benefit" under SORN 36.003(3). But such an open definition cannot satisfy § 552a(3)(4)(D)'s requirement that agencies notify individuals of the purposes for which their information may be used. What is more, the terms that immediately precede "benefit" in SORN 36.003(3)— "contract, security clearance, license, grant"—show that "benefit" denotes a narrower and more technical meaning. And the scope of routine uses is confined by the published definitions. *See*

---

[7] In *Britt*, the court noted that purpose of the publication requirement was to provide "meaningful public notice," and "[i]t was Congress' intent that the routine use exception should serve as a caution to agencies to think in advance what uses [they] will make of the information." 886 F.2d at 548 (cleaned up); *see also Radack v. Dep't of Justice*, 402 F. Supp. 2d 99, 105 (D.D.C. 2005) ("In order to ensure that people are aware of the purpose for which their information might be disclosed, agencies are required to publish each routine use in the Federal Register.").

*Doe v. Naval Air Station, Pensacola, Fla.*, 768 F.2d 1229, 1231–32 (11th Cir. 1985). The Treasury, however, has not shown that a work detail fits within this narrower universe of benefits contemplated under SORN 36.003(3). Thus, neither SORN 36.003(3) nor 36.003(9) covers the disclosure of Ms. Tran's performance appraisal, and the "routine use" exception does not apply.

B.

The Treasury's next argument is on the money. Section 552a(b)(1) is known as the intra-agency "need-to-know" exception. *See, e.g., Sussman v. U.S. Marshals Serv.*, 808 F. Supp. 2d 192, 200–02 (D.D.C. 2011). It permits agencies to disclose otherwise protected records "to officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). The Treasury correctly contends that this section permits the disclosure of Ms. Tran's performance appraisal.

First, the disclosure here was "intra-agency," because both OPR and SB/SE are Treasury components. Ms. Tran does not argue otherwise. And other courts that have considered Privacy Act claims involving disclosures between separate offices within a department have evaluated claims from the Executive Department-level perspective.

*Sussman* considered whether the Marshals Service violated the Privacy Act by disclosing information to the FBI that implicated the plaintiff in various financial crimes. 808 F. Supp. 2d at 197. Both the Marshals Service and the FBI are components of the Department of Justice. The court dismissed Mr. Sussman's argument that because the Marshals Service was the agency that maintained the record its disclosure to the FBI could not fall under the intra-agency exception. *Id.* at 200–02. The court explained that from the department-level perspective, "DOJ, insofar as it maintains the USMS records at issue, does not disclose those records to the FBI as a separate agency that does not maintain such records; instead, DOJ discloses those records to

*itself*, insofar as it maintains FBI records as well." *Id.* at 201 (emphasis in original); *see also Thompson*, 400 F. Supp. 2d 1 (evaluating disclosures among offices within the Department of State). So too here. While OPR and SB/SE are separate offices within the Treasury, from the department-level perspective the Treasury maintains the records of both offices and the disclosure was intra-agency.

Second, the Treasury employees who examined Ms. Tran's performance appraisal had a "need-to-know" the information. "What matters . . . is the 'need-to-know' of the agency official who *received* the disclosure . . . ." *Cacho v. Chertoff*, 2006 WL 3422548, at *4 (D.D.C. Nov. 28, 2006) (emphasis in original). And "[s]ection 552a(b)(1) does not require an agency to list those of its officers eligible to look at protected records, nor does it demand that an agency official be specifically assigned to examining records." *Bigelow v. Dep't of Defense*, 217 F.3d 875, 877 (D.C. Cir. 2000). Instead, the Court should determine "whether the official examined the record in connection with the performance of duties assigned to him and whether he had to do so to perform those duties properly." *Id.* In other words, did the examining official have a legitimate purpose for the review, or was he improperly accessing an employee's private records?

Here, the disclosure of Ms. Tran's performance appraisal to Ms. Romano, Mr. Rath, and the front-line managers in the D.C. field office falls comfortably within § 552a(b)(1). Remember that Ms. Tran began this disclosure—although perhaps unwittingly—by applying for a detail in this office. Mr. Meneely then tasked the Area Counsel and front-line managers with evaluating Ms. Tran's detail request and recommending whether to approve it. As he explained, "[t]hey're the people that have to train and manage any potential detailee." Meneely Dep., ECF # 32-13 p. 52: 18–20. The only time that these individuals examined Ms. Tran's performance appraisal was in performing their assigned duty.

And they had a need-to-know the information in Ms. Tran's performance appraisal to perform their assigned duty properly. Agencies often invoke the "need-to-know" exception when they release records for a disciplinary investigation. *See, e.g.*, *Bigelow*, 217 F.3d at 877. But it equally applies to a detail decision. Both are decisions about whether an employee is fit for a position within the agency or can perform certain duties. Both are triggered by the employee's actions, not supervisory caprice.

In evaluating whether a potential detailee has the requisite experience to benefit SB/SE, it would be necessary to know certain information from the performance appraisal. For example, the performance appraisal rates employees on legal skills, *e.g.*, "Written Work," "Oral Communication," and "Legal Interpretation." *See* Tran Performance Appraisal, ECF # 32-6. Because SB/SE's role is to provide legal advice and guidance on tax litigation, that information would be necessary to evaluating whether the office would benefit from the potential detailee.

The Privacy Act certainly does not require agencies to make uninformed personnel decisions. Indeed, courts have recognized that "[t]he 'need-to-know' exception permits the disclosure of a person's protected record to a supervisor who needs the information contained in the record to assess the person's trustworthiness and make related personnel decision." *Cacho*, 2006 WL 3422548, at *6; *see also Doe v. Dep't of Justice*, 660 F. Supp. 2d 31, 45 (D.D.C. 2009); *Bigelow*, 217 F.3d at 877. And the front-line managers recommended against approving Ms. Tran's detail request in part because "they did not believe that Ms. Tran had the litigation skillset needed to be a docket attorney in the D.C. field office." Meneely Dep., ECF # 32-13 p. 42: 16–19.

But Ms. Tran complains that Mr. Meneely, who supervises the Area Counsel and front-line managers just discussed, did not need to view her performance appraisal to perform his

11

duties.  Not so.  Of course, "the need to know exception is not limited only to officers and employees within a certain office within an agency rather than to officers and employees of the entire agency." *Doe*, 660 F. Supp. 2d at 46 (cleaned up).  In *Hanna v. Herman*, the court found that an agency supervisor's disclosure of information about the plaintiff's demotion to a supervisor elsewhere in the agency "would be covered by the 'need to know' exception as a matter of law."  121 F. Supp. 2d 113, 123–24 (D.D.C. 2000).

As Deputy Division Counsel responsible for SB/SE's field operations, including for the D.C. field office, Mr. Meneely was among the highest-ranking officials in SB/SE Division Counsel's office.  Courts have recognized that the "need-to-know" exception "encompasses personnel matters," *see Viotti v. U.S. Air Force*, 902 F. Supp. 1331, 1337 (D. Colo. 1995), and Mr. Meneely would have needed to know the information disclosed about Ms. Tran because of his supervisory role in determining her suitability for a detail in his office. *Cf. Doe*, 660 F. Supp. 2d at 46 ("As the 'highest-ranking officers' in the office, with 'supervisory and disciplinary authority over the plaintiff,' the Criminal Chief and the Acting U.S. Attorney had a need to know the information disclosed about he plaintiff.).

Moreover, Mr. Meneely examined Ms. Tran's performance appraisal only in the performance of duties assigned to him and he needed to know this information to perform those duties properly.  Ms. Moe tasked Mr. Meneely with shepherding Ms. Tran's detail request through the process, reviewing the recommendation of the front-line managers, and making the final recommendation about her request.  Mr. Meneely testified that when SB/SE received a detail request, Ms. Moe would route it "to one of the deputy division counsel, either [Mr. Meneely] or Joe Spires . . . , and [Ms.] Moe in 2016 would have tasked one of them with shepherding [the request] through the process."  Meneely Dep. at p. 17: 4–10.  Ms. Moe included

Mr. Meneely on her initial email about Ms. Tran's detail request to Ms. Manasevit. And she asked that Mr. Meneely speak with Ms. Tran's supervisor and stated that SB/SE would be seeking information about Ms. Tran's qualifications and performance history. More, Ms. Moe tasked Mr. Meneely with making the final recommendation for or against the detail to F&M, *id.* at pp. 24: 1–25: 1, which he did in consultation with her, *see id.* at pp. 24: 19–25:1, 25: 12–19, 49: 3–18. To perform these duties properly, Mr. Meneely appropriately examined Ms. Tran's performance appraisal.

Ms. Tran argues that Mr. Meneely relied heavily on front-line supervisors for a recommendation on her detail and that his concern was only that the detailee was licensed to practice before the U.S. Tax Court. She also notes that Mr. Meneely discussed the front-line manager's recommendation with Ms. Moe before relaying SB/SE's recommendation to F&M. She suggests that he was just a go-between who had no substantive role in the decision, making his peering into her records extraneous.

But just because Mr. Meneely delegated fact-finding tasks to front-line supervisors does not vitiate his responsibility to review their recommendation and make a final recommendation regarding the detail. Reviewing their recommendation properly involved reviewing the information on which they based their recommendation, including Mr. Tran's performance appraisal. And while Mr. Meneely may have deferred to his front-line managers about the specific skillsets that the detailee would need, he still would need confirm that Ms. Tran had at least a fully satisfactory rating on her performance appraisal under SB/SE's policy. *See id.* at 21: 4–18.

Finally, while Mr. Meneely discussed the front-line supervisors' recommendation with Ms. Moe before making a final decision, that does not create a genuine dispute about his duties.[8] Again, Mr. Meneely directly reported to Ms. Moe, and as Division Counsel, she had authority to recommend granting or denying the detail request. So even though she had referred Ms. Tran's request to Mr. Meneely, it would be reasonable for him to confer with her about the final recommendation.

Mr. Meneely testified that because Ms. Moe had initially assigned him Ms. Tran's detail request, he felt it necessary to "keep her in the loop." Meneely Dep., ECF # 32-13 p. 24: 16–25: 1. The record shows that he did review the front-line supervisors' recommendation and discussed it with Ms. Moe, *Id.* at 24: 21–25: 1, 49: 3–18, before informing F&M that SB/SE recommended against approving Ms. Tran's request, *id.* at p. 25: 12–19. None of this undermines Mr. Meneely's testimony that Ms. Moe had delegated to him responsibility for Ms. Tran's detail request. Ms. Tran has failed to establish that there is a genuine issue of fact about Mr. Meneely's duties for her detail request or that in performing those duties he needed to know the information in her performance appraisal.

IV.

For all these reasons, the Defendant's Motion for Summary Judgment is granted. A separate order will issue.

Dated: January 15, 2019	TREVOR N. McFADDEN, U.S.D.J.

---

[8] Ms. Tran does not challenge the disclosure of the information in her performance appraisal to Ms. Moe. *See* Pl. Compl., ECF # 1 ¶¶ 21–25.